Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
IN RE:                                                              Chapter 11

ABR BUILDERS LLC,                                        Case No. 19-11041 (SHL)

                                    Debtor.
----------------------------------------------------------X

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**DEBTOR'S DISCLOSURE STATEMENT DATED OCTOBER 3, 2019**

**INTRODUCTION**

1.      The above-captioned Debtor[1] submits this Disclosure Statement ("Disclosure Statement") pursuant to § 1125 of the Bankruptcy Code to its known creditors in order to disclose that information deemed by the Debtor to be material, important, and necessary for the creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan of Reorganization (hereafter the "Plan").  Only "impaired" creditors, as that term is defined in the Bankruptcy Code, are entitled to vote for the Plan or to reject the Plan.  A full definition of what constitutes impairment is contained in § 1124 of the Bankruptcy Code.

---

[1] Capitalized terms used herein, unless otherwise defined, shall have the same meaning as defined in the Plan.

FoxNAS\Leo\ABR\Disclosure Statement V5\10-3-19

2.      A copy of the Plan accompanies this Disclosure Statement, as well as a Ballot Form for the acceptance or the rejection of the Plan.

3.      The Court has set _____, 2019 at __:00 _.m. for a hearing on the approval of the Disclosure Statement.  Creditors who are entitled to vote may vote on the Plan by filling out and mailing, on or before _____, 2019 the accompanying Ballot Form to counsel for the Debtor, Leo Fox, Esq., 630 Third Avenue, New York, New York 10017.

4.      As a creditor, your vote is important.  In order for the Plan to be deemed accepted, members of each impaired class designated in the Plan that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the claims of the class that vote must vote for the Plan. A claim or interest is impaired unless the Plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default; (A) cures or provides for a cure, subject to Court approval of any such default that occurred before or after the commencement of the Chapter 11 Case, other than a default of a kind specified in § 365 (b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY**

REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH IS OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT BY THE COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE MERITS OF THE PLAN. THE COURT DOES NOT RENDER ANY OPINION AS TO WHETHER THE PLAN SHOULD BE ACCEPTED OR REJECTED BY CREDITORS.

CREDITORS ARE URGED TO READ THE PLAN IN FULL. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR, ITS CREDITORS, AND INTERESTED PARTIES, AND IT SHOULD BE READ TOGETHER WITH THIS DISCLOSURE STATEMENT SO THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.

5.    The following is a summary of the classes and their treatment in tabular form:

| Class | Claim Amount | Treatment | Projected Recovery |
|---|---|---|---|
| **Class 1**<br>JP Morgan Bank<br>(Secured inventory accounts, general tangibles) | $128,559.75 | Payment in full | 100% |
| **Class 2**<br>Priority Wage Claims<br>Pursuant to § 507(A)(4)<br><br>Department of Labor<br>(Claim No. 6)<br>(9 Individuals) | $80,707.58 | Payment in full for Allowed wage priority claims over four (4) years | 100% |
| **Class 3**<br>Government Priority Claims<br>Pursuant to<br>§ 507(A)(8)<br>(subject to adjustment)<br><br>Department of Treasury<br>(Claim No. 9)<br>(Withholding FICA)<br>(Periods 12/31/1 and 3/31/19)<br><br>NYS Dept. of Tax2<br>(Claim No. 11)<br>(Withholding)<br>(Periods 12/31/18; 3/31/19 and 5/31/19) | $324,959.22<br><br>$101,312.96 | Payment in full over four (4) years | 100% |
| **Class 4**<br><br>General Unsecured Creditors<br>(Including any deficiency employee claims, trade and governmental entity unsecured claims)<br>(Total claims of $13,458,000)<br><br>Department of Labor<br>(Claim Nos. 17 & 18)<br>(Unemployment Insurance) | Approximately $3,800,000 to $4,000,000<br><br>$12,442 | Payment of "Pot" balance after deducting priority claims. | 3.0% - 10.67% |
|  |  |  |  |

2 Claim 11 was amended to add $174,000 in sales taxes.  This amount is not due because the Debtor never incurred this sales tax.

| Class 5 | | Shareholders retain stock interest in consideration *inter alia* for funding $200,000 | |
|---|---|---|---|
| Holders of equity interests (Bolek Ryzinski and Lukas Macniak) | | | |

The above sums are estimated and approximate. Debtor reserves the right to object to any and all claims as to amount, classification and priority.

## PLAN OVERVIEW

6.      Under the Plan, the Debtor shall make initial payments of $80,000 towards administrative expenses and other Chapter 11 operating expenses and pay priority tax and wage claims 100% and unsecured claims over four (4) years after the first year after the Effective Date.

## BACKGROUND

**A.      Overview of the Debtor**

7.      The Debtor is in the business of general contracting with offices at 39 West 38th Street, Suite 1100W, New York, New York 10018.

8.      The problems resulting in this Chapter 11 case arose in connection with the Debtor's insurance coverage. The New York State Insurance Fund governing the Workman's Compensation and Disability Insurance has the practice of billing prospectively for such insurance based upon historical data. In 2016 and early 2017, the Debtor had approximately 70 employees. From April of 2017 until April of 2018 the number of the Debtor's employees jumped to approximately 130 employees. Thereafter, the number of Debtor's employees was reduced substantially down to the point that the Debtor had approximately 35 employees prior to the Chapter 11 filing. The New York State Insurance Fund determined that the Debtor should be billed an additional $250,000 for 2018 plus prospectively and additional $250,000 for 2019 and based on the past historical number of employees. In addition, the New York State Insurance Fund

required that such bills be paid immediately. The Debtor did not have sufficient funds to make these payments which are required in order to continue to operate.

9.      In addition, approximately 80% of the jobs that the Debtor was engaged in related to contracts entered into in 2016 and 2017. The Debtor has found that its labor costs have increased by approximately 30% to 35% and its material costs have increased by approximately 20% to 30% since the contracts had been entered into.

**B.      This Bankruptcy Case**

10.     On April 4, 2019, (the "Filing Date"), the above Debtor (the "Debtor") filed a voluntary petition for reorganization under Title 11, Chapter 11, of the United States Code, 11 U.S. C. §101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York.

11.     The Debtor has remained in possession of its property and continued in the operation and management of its business as a Debtor and Debtor-in-Possession pursuant to Sections §§1107 and 1108 of the Bankruptcy Code.

12.     On April 18, 2019, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs (Docket Nos., 8 & 9) (the "Schedules" and "SOFA" respectively).

13.     The Debtor was literally out of business at the time it filed because it had lost its insurance coverage which enabled it to operate as a contractor.

14.     Pre-petition, the Debtor lost its insurance coverage with New York State Insurance Fund ("NYSIF") resulting in the inability to continue to render contracting work. The Debtor commenced an Adversary Proceeding and made a Motion for Injunctive Relief to compel NYSIF to continue to provide insurance coverage. At an Initial Hearing, NYSIF agreed to an expedited audit procedure and the Court denied the Debtor's Motion to Compel NYSIF to grant coverage. On August 2, 2019, upon a Stipulation, the Debtor withdrew its Complaint and the Adversary

Proceeding was closed.

15.     The Debtor ultimately obtained insurance coverage and commenced its operations on or about July 15, 2019.

16.     In light of the passage of time, the Debtor's deadline for exclusivity was quickly approaching. The Debtor made an application to extend the exclusivity period for a brief period of time. An opposition was filed to such Motion by 1143 Fifth, LLC. At a hearing held on September 4, 2019, the Court granted the extension of exclusivity by Order entered on September 13, 2019.

17.     A motion was made by Glen and Alison Kunofsky to compel the Debtor to either assume or reject a general contractor's agreement as amended. The Debtor reviewed the motion and determined that it would be in the best interest of the Debtor's estate to for the contract to be rejected. The Debtor and the movant entered into a Stipulation rejecting the contract. That Stipulation was submitted to the Court and entered by the Court on May 6, 2019.

18.     An application was made by the Debtor to settle a dispute with DMC Columbia LLC in the amount of $80,000 payable over nine (9) months. On September 10, 2019, the Court entered an Order authorizing the settlement with DMC Columbia LLC.

## 1143 FIFTH, LLC LITIGATION

19.     On December 6, 2016 the Debtor and 1143 Fifth, LLC, the owner of certain real property located at 1143 Fifth Avenue, New York, New York (the "Real Property") entered into a contract providing for the Debtor render contracting services consisting of demolition, excavation, scaffolding, shoring, rendering certain concrete, masonry and other construction work required to be performed with respect to the Real Property. The contract had a total price of $4,991,707.90. During the course of the contract, and as the contract was close to being completed, the Debtor alleged that the owner failed to comply with the responsibilities under the contract. The

Debtor put the owner on notice that it would terminate the contract unless the owner cured the defaults alleged by the Debtor. A day before the Effective Default Date, the owner issued a notice purporting to terminate the contract. The owner has refused to pay the Debtor any sums which the Debtor claims is owed under the contract. The Debtor filed a Mechanic's Lien in the amount of $576,698.62 representing its valid claims for damages arising from the owner's breach of the contract for work and material undisputedly performed and supplied by the Debtor which remains unpaid.

20.     The owner filed a claim in the amount of $829,804 purporting to constitute the costs of completing the contract and assessing the Debtor damages as a consequence. The Debtor believes the claim of this creditor to be not meritorious and that it has a legitimate counterclaim which may be greater than the amount set forth on its Mechanic's Lien and will prevail in any litigation in this matter.

21.     The Debtor intends to proceed with this litigation seeking to recover the amounts the Debtor believes are due and owing in the Bankruptcy Court. Any amounts recovered whether by litigation, collection or settlement shall be deposited into the "Pot" for distribution under the Plan, net after payment of the cost of litigation, attorney's fees and disbursements, and any other charges with respect to the litigation. The Debtor shall use its best efforts to pursue this litigation in an economical and expeditious fashion.

## **PROFESSIONALS**

22.     The Debtor's counsel, Leo Fox, was retained by Order dated April 20, 2019. An application for a proposed Order to authorize the retention of David Gronsbell & Co., CPA, as accountants, was submitted but was withdrawn. On August 8, 2019, the application was made to retain Eisikovic & Kane LLP as accountants. On August 23, 2019, the Court entered an Order authorizing the retention of such accountant.

**C.**    **The Debtor's Lease**

23.    The Debtor leases space for the business at 39 West 38th Street, Suite 1100W, New York, New York 10018 pursuant to a Lease.  The Lease expires on March 1, 2024 and the rent is currently $17,000 per month over the entire space, a portion of which has been subleased resulting in a net rent due by the Debtor of $6,000 per month.

**D.**    **Other Important Bankruptcy Events**

23.    The Debtor submitted an Application for a Bar Date which provides for creditors to file their claims by a date certain.  By Order dated July 2, 2019 (Docket No. 26] the Debtor established a bar date in this bankruptcy case for August 12, 2019 for all creditors except governmental units and October 15, 2019 for claims filed by governmental units.

24.    Pursuant to the Bar Date, creditors filed claims totaling $13,458,000.  The Debtor believes that at least $9,750,000 of such claims are "litigation claims" arising from disputes with the Debtor regarding contracts which are in dispute and are not valid (the Debtor reserving the right to assert further objections to all claims) leaving the Bankruptcy Estate with general unsecured claims of approximately $3,800,000.

## SOURCE OF FUNDS FOR PLAN

25.    The initial Plan payment due on Confirmation is to be funded, a portion of the $80,000 settlement proceeds of the Debtor's settlement with DMC, by Boleslav Ryzinski and Lukas Macniak.  The following are the amounts of the funds necessary for confirmation of the Plan:

| | | |
|---|---|---|
| (1) | Leo Fox, Esq., Counsel to Debtor<br>(§ 507(a)(1)) (net after prior payments)<br>(Administration – Priority) | $35,000 - $40,000 |
| (2) | Eisikovic & Kane (Accountants to Debtor)<br>(§ 507(a)(1)) (net after prior payments)<br>(Administration – Priority) | $10,000 |

| | | |
|---|---|---|
| (3) | United States Trustee Fees | $10,000 |
| (4) | Initial Monthly Payment to Class 1 secured creditor | $4,500 |
| | **TOTAL** | **$60,000 - $65,000** |

The source of these funds shall be the proceeds of the settlement with DMC (see ¶ 18).

<strong><u>SUMMARY OF PLAN</u></strong>

26.    The Plan is composed of five (5) Classes.  Classes 1, 2 and 4 are impaired and

Classes 3 and 5 are not impaired.

27.    **<u>Class 1</u>** In full satisfaction of the claims of JP Morgan Chase N.A. (the "Bank").

Such creditor filed a Proof of Claim (Claim No. 35) asserting a claim in the amount of $128,559.75

secured by inventory, accounts, chattel paper, equipment, general intangibles and proceeds.  Such

creditor shall be paid its Allowed secured claim by the Debtor through the making of monthly

payments each in the amount of $4,500 per month commencing on the Effective Date against the

principal amount of the Allowed secured claim plus interest at the prevailing pre-petition interest

rate until the Allowed claim is paid in full.  The time period for payment of *Class 1* shall not be

extended as is the case for other Classes as provided in "Implementation of Plan".

28.    Such class shall retain its pre-petition liens to the extent that such liens were valid

and perfected as of the Chapter 11 filing date.  Upon the full payment of the claims of the Bank,

the Bank shall deliver written releases of, or assign at the direction of the Debtor, its security

interests on the Debtor's property.

29.    **<u>Class 2</u>** Pursuant to § 1129(a)(9)(B)(i) of the Bankruptcy Code holders of the

Allowed pre-petition priority wage claims shall be paid deferred annual cash payments each in the

amount of 25% of such allowed claim, upon the first year after the Effective Date  and continuing

annually up through four (4) years after the Effective Date,  which payments shall have a value as

of the Effective Date of the Plan equal to the allowed amount of such claim. The four (4) year period may be extended as provided in "Implementation of Plan".

30.     **Class 3** (Allowed governmental priority claims). Pursuant to § 1129(a)(C) of the Bankruptcy Code and in full satisfaction of such claims, holders of the Allowed pre-petition priority tax claims of *Class 3* shall be paid by the Debtor from the "Pot" annual cash payments each in the amount of 25% of the aggregate of allowed claims of such Class commencing upon the first year after the Effective Date and continuing on an Annual Basis up until April 4, 2024 (the last payment year date may be shortened year commencing with the third year after the Effective Date and continuing up until April 4, 2024, which payments shall have a value as of the Effective Date of the Plan equal to the allowed amount of such claim. All payments shall be applied in the following priority; tax debts which are responsible person and officer taxes that constitute personal obligations of officers under the Internal Revenue Tax Code and thereafter to all other taxes. The payment period may not be extended.

31.     **Class 4**    The holders of Allowed general unsecured claims shall be paid their pro rata share of the balance of a "Pot" described below (see Implementation of Plan) in annual installments commencing the first year after the Effective Date and continuing annually for four (4) years after the Effective Date in full satisfaction of such claims. Initially, payments shall be made on a worst-case basis (1.5% of the Principal Balance of an Allowed *Class 4* claim as identified in the Disclosure Statement) and shall be adjusted as pending matters such as objections and determination of claims are made and the assets deposited into the Pot are quantified.

32.     In the event that there is an insufficient amount to make a payment due to any Class (other than *Classes 1 and 3*) from Net Income (the "Deficiency"), the Deficiency shall accrue and be paid in the following year, in addition to the Debtor's obligation to make the payment from Net Income in such year. The four (4) year period shall be extended for another two (2) years in the

event the Debtor has failed to make the full annual installment payment from Net Income in any

year during the four (4) year payment period and shall be extended by four (4) years in the event

the Debtor fails to make the full annual installment payment from Net Income in any two (2) years

during the four (4) year payment period.

33.    In the event that *Classes 2 and 4* do not receive the entire installment balance due

in any year as a result of the Debtor's obligation to make an installment payment from Net Income,

the Debtor shall deliver to each creditor in such Class Annual Statements of its operations in such

year along with any distribution payment made to the creditor in such Class, reflecting the reason

for the failure to pay the entire installment balance due in such year (see definition Net Income).

For the first year, the Annual Statement shall reflect operations which commence from the

Confirmation Date up until 11 months after the Confirmation Date (the "First Annual Last Day").

Thereafter, during the second year, the Annual Statement shall reflect operations from the First

Annual Last Day for a period of 12 months and so on until the termination of the payment period

under the Plan.

34.    The Debtor has agreed to escrow with its insolvency attorney the proceeds of the

settlement with DMC totaling $80,000 payable over an installment payment schedule payable over

90 days after entry of a Bankruptcy Court Order approving the Stipulation which was entered on

September 10, 2019.   This payment shall constitute an escrow payment on account of the

obligations due under the Plan.

35.    **Class 5** Ownership interests shall retain their equity interest in the Debtor and, in

addition, shall receive a discharge of all claims asserted against the ownership interest arising from

or related to, or the guaranty of, the claims against the Debtor pursuant to ¶ 18.5 of the Plan in

consideration for the payment to the Debtor by such ownership interest of a total of $200,000

payable   in four annual payments of $50,000 each commencing 15 days before the First

Anniversary of the Effective Date (each payment made 15 days before the Anniversary of the Effective Date) for a period of four (4) years up through the fourth year after the Effective Date ("Principal Contribution"). The ownership interest (the Principals) shall be entitled to the releases provided for in ¶ 18.5 of the Plan if the ownership makes all the required payments and such payments are distributed to creditors whether or not the Plan is finally consummated.

## IMPLEMENTATION OF PLAN

36.    All creditors with Allowed claims shall be paid their claims from the "Pot" described below in waterfall fashion. *Class 4* creditors shall share, on a *pro rata* basis, in the "Pot" balance remaining after the non-Class 4 creditors are paid ("Class 4 Distribution"). All distributions may be pre-paid without penalty.

37.    The "Pot" shall be funded through a combination of (a) principals payment of $200,000 over 4 years, each installment being $50,000 each, commencing 15 days before the first anniversary of the Effective Date up through 4 years after the Effective Date (the "Principal Contribution"), (b) an installment payment by the Debtor of $450,000 to be paid from Net Income of the Debtor's operations payable over four (4) annual installments of $112,500, each year, commencing 15 days before one (1) year after the Effective Date and continuing until 15 days before (4) years after the Effective Date, and (c) the net proceeds whether by collection, recovery or settlement, (after payment of all fees, expenses and costs of such litigation) of the litigation with 1143 Fifth, LLC. (see litigation with 1143 Fifth, LLC) under the Plan.

38.    The "Pot" is estimated to total over $1,000,000. *Class 4* creditors shall share in the balance of the "Pot" remaining after the non-Class 4 creditors are paid. The Debtor shall make determinations at the time of each annual distribution of the amounts necessary to pay the non-Class 4 creditors in order of the priority of such creditors before determining the amount payable to the *Class 4* creditors. However, the Debtor shall make payments to *Class 4* under the

assumption that "Pot" sources shall make their required payments. Assuming the "Pot" sources pay the amounts due, *Class 4* creditors shall receive approximately 3% of their claims assuming that none of the total claims of $13,458,000 are reduced or extinguished and shall receive approximately 10.67% if the Debtor can bring the total claims universe down to $4,000,000.

39.    The "Pot" shall be distributed in the following priority; (a) the Debtor's legal and an accounting costs in effecting the distribution and (b) the distribution described in the Plan.

40.    In the event that there is an insufficient amount to make a Plan payment due to *Classes 2 and 4*, the Deficiency shall accrue and be paid in the following year, in addition to the Debtor's obligation to make the distribution in such following year. The four (4) year period shall be extended in the case of failure to pay *Classes 2 and 4* for another two (2) years in the event there is a Deficiency in any year during the four (4) year payment period and shall be extended by four (4) years in the event there is a Deficiency in any two (2) years during the four (4) year payment period.

41.    In the event that there is a Deficiency as a result of the Debtor's failure to make an installment payment to *Classes 2 and 4* from its Net Income, the Debtor shall deliver to each creditor in such Class Annual Statements of its operations in such year along with any distribution payment made to the creditor in such Class, reflecting the reason for the failure to pay the entire installment balance due in such year (see definition Net Income). For the first year, the Annual Statement shall reflect operations which commence from the Confirmation Date up until 11 months after the Confirmation Date (the "First Annual Last Day"). Thereafter, during the second year, the Annual Statement shall reflect operations from the First Annual Last Day for a period of 12 months and so on until the termination of the payment period under the Plan.

42.    The failure to make Plan payments to the creditors   by the time periods set forth in the Plan shall constitute a default under the Plan.

43.     The Debtor has agreed to escrow with its insolvency attorney the proceeds of the settlement with DMC totaling $80,000 payable over an installment payment schedule payable over 90 days after entry of a Bankruptcy Court Order approving the Stipulation which was entered on September 10, 2019.    This payment shall constitute an escrow payment on account of the obligations due under the Plan.

## ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

44.     Chapter 11 administration creditors, including the professionals for the Debtor who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code, and the fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, are not classified.    All fees of professionals retained by the Debtor shall be approved by the Bankruptcy Court.

45.     All post-confirmation quarterly reports and quarterly fees required by the United States Trustee under 28 U.S.C. § 1930 shall be filed and paid on a quarterly basis until entry of a final decree, dismissal of the case or conversion to Chapter 7.

## THE REORGANIZED DEBTOR

46.     Upon the Effective Date, the Debtor will become the "Reorganized Debtor" and shall have achieved a reorganization involving the various claims of all the creditors under the Plan.    The Reorganized Debtor shall change its core business from General Contractor to a Construction Manager which will eliminate the funding of payroll and substantial subcontractor expense and increase the Net Income. The Reorganized Debtor shall continue its corporate identity and shall continue to function as a corporation with all the authority granted by its certificate of incorporation, the bylaws and appropriate law.    The principals shall continue to own the shares of stock of the Reorganized Debtor in the same percentages that such principals pre-petition owned the share of stock of the Debtor.    The Principals shall continue to act as Officers.    All the present

provisions in the certificate of incorporation and the by-laws, shareholders' meetings, election of directors and other corporate matters shall govern the Reorganized Debtor. The provisions of New York Corporation Law shall govern the election and selection of any officer and director of the Debtor and any successor thereof.

47.    Upon Confirmation, the Reorganized Debtor shall be vested with all property of the Debtor free and clear of claims and interests, except as set forth in the Plan, and after Confirmation the Reorganized Debtor shall continue its business and manage its affairs without further supervision of the Court subject to the retention of jurisdiction provisions set forth herein.

48. Annexed hereto are historical statement operations along side the projections (_Exhibit A_) and a pro forma Confirmation balance sheet (_Exhibit B_). A comparison of the historical operations to the projections demonstrates that this Debtor will be able to operate and meet its projections. In the event the projections are not borne out, the Debtor may not be able to continue to operate and pay its obligations for operations and for Plan payments.

## THE LIQUIDATION ANALYSIS

48.    The Debtor believes that the only alternative to confirming this Chapter 11 Plan is a conversion of this case to a case under Chapter 7 of the Bankruptcy Code. Annexed hereto as _Exhibit C_ is a liquidation analysis of the Debtor's assets. The analysis represents the Debtor's effort to estimate the results of an immediate liquidation under Chapter 7 of the Bankruptcy Code. As demonstrated therein, creditors will receive far less in a Chapter 7 case, then under the Chapter 11 Plan.

## EXECUTORY CONTRACTS

49.    The following pre-petition constructions contracts will be assumed under the Plan, 402 East 118th Street and 336 East 112th Street. The Debtor will assume its Lease at its premises located at 39 West 38th Street, Suite 1100W, New York, New York 10018, the Lease on its storage

facility located at Greenbrook in Stamford, Connecticut and equipment lease with TCF Capital Solutions providing for payment of $1,770 per month for an additional 14 payments and for ownership of the equipment. The Debtor believes that there will not be any required expenditure of funds in order to cure these contracts. The Debtor is prepared to demonstrate its ability to continue and complete the above referred construction contracts.

50.    The Debtor will reject any other executory contracts on the Effective Date. Persons holding claims as a result of the rejection of any executory agreement identified in the Plan may file a claim with the Bankruptcy Court within 30 days of the Order approving the Plan.

## TAX IMPLICATIONS

51.    The Debtor is not aware of any significant tax implication which would inure to the Debtor as a result of the filing and confirming of this Plan. The Debtor suggests that creditors consult their tax advisors with respect to the implication of the Plan and the Confirmation upon such creditors.

## PREFERENCE AND FRAUDULENT CONVEYANCE ACTIONS

52.    The Debtor has reviewed its books and records and has investigated whether there are any valid causes of action, including proceedings to avoid transfers including, but not limited to, proceedings under §§ 544(b), 547, 548, 549, 550 of the Bankruptcy Code or applicable state law. After analyzing the risks and expenses related to the prosecution of and the limited recovery, if any, which would inure to the benefit of the creditors in the event that the Debtor is successful, and the ability to collect on any judgments obtained, the Debtor has determined that it does not intend to institute any future causes of action for preference or fraudulent conveyance.

## RETENTION OF JURISDICTION BY THE COURT

53.    The Plan provides that the Court shall retain jurisdiction for specified purposes, including without limitation, the determination of all controversies arising under or in regard to

the Plan, objections to claims, hearing and determining applications for allowances of compensation and reimbursement of expenses, and the enforcement or continuation of orders entered in this case, until substantial consummation, and closing of the case.

## **DISCHARGE AND RELEASES**

54.     Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge all claims against the Debtor.   Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and Holders of Stock Interest provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims as of the Effective Date, of any nature whatsoever, whether known or unknown, contingent or liquidated including any interest accrued or expenses incurred thereon from and after the Debtor's Petition Date, against the Debtor, the Debtor-in-Possession or the reorganized Debtor (or any of their properties or interest in properties). Except as otherwise provided in the Plan, upon the Consummation Date, all Claims against the Debtor and will be satisfied, discharged and released in full exchange for the consideration provided for hereunder.  All persons and entities shall be precluded from asserting against the Debtor, the reorganized Debtor, its successors, or its respective assets or properties, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

55.     Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, claim, other liability or interest against the Debtor that would be discharged upon Confirmation of this Plan, pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this §, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any

right to distribution with respect to such property under the Plan; (b) enforcing, attaching collecting or recovering in any manner or judgment, award, decree, order other than as permitted under Sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

56.    To the extent permitted by applicable law, if the respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors, and agents of the Debtor and their professionals act in good faith, they shall not be liable to any holder of a Claim, or any party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with (a) the operation of the Debtor; (b) the proposal or implementation of any of the transactions provided for or contemplated under this Plan; or (c) the administration of this Plan or the distribution to be made pursuant to this Plan, other than for willful misconduct or gross negligence. The Debtor and its respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors and agents, may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall conclusively establish good faith.

57.    On the Effective Date, to the fullest extent permissible under applicable law, the Debtor and Debtor-in-Possession shall be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the documents delivered in connection therewith) against the principals, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, that relate in any way to the Debtor or Debtor-in-Possession, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or

prior to the Effective Date, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or other capacity. Nothing in this § shall be construed as a release of any fraud, gross negligence, or willful misconduct.

58.    As of the Effective Date, except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, and in consideration for the payments being made by the Principals with respect to the Plan, each holder of a claim receiving distribution under the Plan (the "Releasing Party") is deemed to have released the Debtor and the principals from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct or guarantee claims held by any of the Releasing Parties against the Debtor and its principals or derivative claims asserted on behalf of the Debtor[s], whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any events, acts, omissions, or the transactions giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, or its principals, taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

59.    It has been held that a Plan may be filed in the Chapter 11 case of a corporation, which is to be funded, in significant part, through the corporate officer's personal assets entitling such officer to the issuance of a stay and release of claims against the corporate officer as a non-debtor.  See *SEC v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 960 F.2s 285, 293 (2d Cir. 1992), cert. dismissed, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.3d.2d 497 (1993); *In re A.H. Robins Co.*, 880 F.2d 694, 701 94th Cir.), cert denied, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1898); *MacArthur Co. v. John s-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93-94 (2d Cir.), cert. denied, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.23d 145 (1988).

60.    More recent cases including *In re Metromedia Fiber Network Inc.*, 416 F.3d 136 (2nd Cir. 2005); *In re Sabine Oil & Gas Corporation*, 555 B.R. 180 (Bkrtcy. S.D.N.Y. 2016) and *In re Genco Shipping & Trading Limited*, 513 B.R. 233 (Bkrtcy. S.D.N.Y. 2014) have stated that such releases are "heavily scrutinized".  However, these principals are entitled to releases even under these recent cases.

61.    Here, the principals will be paying over 18.5% of the  payment under the Plan and will continue to work at the Debtor's business lending their efforts to contribute to the success of the operation of the Debtor's business.  They are also agreeing to work at salaries which reflect a modest amount for an individual of these principal's reputation and ability.  This meets the Metromedia standard in that: (1) they are supplying monetary contribution to the Plan as well as his non-monetary contributions, including supporting the business and  potentially raising cash for the business, (2) the principals have agreed to pay a portion of their non-Debtor Net Cash Income to creditors from the distributions by the Debtor under the Plan, (3) the principals could assert that the Debtor is responsible for claims against them under subrogation or indemnity theory (or under the employment agreement or by-laws), (4) these enjoined creditors are not being paid in full but

are getting the available monies from other sources, and (5) finally, as noted, the principals are putting up a substantial percent of the Plan consideration

## EFFECTS OF COURT'S CONFIRMATION AND FEASIBILITY OF THE PLAN

62.    The effects of Confirmation of the Plan are set forth in the Bankruptcy Code. The following is a brief summary of the effect of Confirmation upon the Debtor, its creditors, and other interested parties. Upon the Effective Date, the provisions of the Plan will bind the Debtor and its creditors, whether or not they have accepted the Plan. All liens and claims are canceled and extinguished unless dealt with differently in the Plan. Satisfaction of the Debtor's pre-Chapter 11 debts and those incurred subsequently to the commencement of this case all are governed by the Plan.

63.    The Debtor believes that the Plan is feasible and that Confirmation is not likely to be followed by liquidation or the need for further financial reorganization. The Debtor and the principals reserve the right to withdraw the Plan if it cannot be confirmed in its current form.

## ANTICIPATED CONFIRMATION DATE

64.    It is anticipated the Plan will be confirmed by the Bankruptcy Court within forty (40) days, assuming the following events take place:

A.    The Plan is duly accepted by creditors; and

B.    The Bankruptcy Court finds that the Plan is feasible and in the best state of creditors; and

C.    The Court finds that the Plan is fair and equitable and does not discriminate unfairly; and

D.    The Debtor has made arrangement with the professionals for the payment of professional fees in the amounts set forth in this Disclosure Statement.

## WHERE TO FILE BALLOTS ON THE PLAN

66.    Pursuant to a Court Order approving this Disclosure Statement, ballots on the

Debtor's Plan must be received by _____, 2019. All ballots should be properly completed and

forwarded to: Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York, New York 10017.


Dated: New York, New York
October 3, 2019

**ABR BUILDERS LLC**
**The Debtor**


By:    _/s/ Boleslav Ryzinski_____
       Boleslav Ryzinski
       President

_/s/ Leo Fox_____
Leo Fox, Esq.
Attorney for Debtor
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

*EXHIBIT A*

## 5 Year Projected income & expences - ABR Builders LLC

| | 2018 | | Year 1 | | Year 2 | | Year 3 | | Year 4 |
|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | |
| Construction Income | $ 16,081,000.01 | $ | 10,300,000.00 | $ | 10,609,000.00 | $ | 10,821,180.00 | $ | 11,145,815.40 |
| Other Income | $ 480,000.00 | $ | - | | | | | | |
| Principal contribution | | $ | 50,000.00 | $ | 50,000.00 | $ | 50,000.00 | $ | 50,000.00 |
| Debtor DMC | | $ | 80,000.00 | | | | | | |
| From litigation | | $ | 250,000.00 | | | | | | |
| **Total Income** | **$ 16,561,000.01** | **$** | **10,300,000.00** | **$** | **10,609,000.00** | **$** | **10,821,180.00** | **$** | **11,145,815.40** |
| | | | | | | | | | |
| **Expences** | | | | | | | | | |
| Blueprints and reproduction | $ 1,902.63 | $ | 1,500.00 | $ | 1,545.00 | $ | 1,575.90 | $ | 1,623.18 |
| Construction materials costs | $ 2,876,478.22 | $ | 3,300,000.00 | $ | 3,399,000.00 | $ | 3,466,980.00 | $ | 3,570,989.40 |
| Equipment Rental for Jobs | $ 112,829.75 | $ | 35,000.00 | $ | 36,050.00 | $ | 36,771.00 | $ | 37,874.13 |
| Other construction costs | $ 197,316.23 | $ | 20,000.00 | $ | 20,600.00 | $ | 21,012.00 | $ | 21,642.36 |
| Subcontractors Expense | $ 7,414,454.05 | $ | 5,300,000.00 | $ | 5,459,000.00 | $ | 5,568,180.00 | $ | 5,735,225.40 |
| Tools and small equipment | $ 2,529.35 | $ | 3,000.00 | $ | 3,090.00 | $ | 3,151.80 | $ | 3,246.35 |
| Freight in | $ 850.14 | $ | - | $ | - | $ | - | $ | - |
| Workers Compensation | $ 402,509.92 | $ | 35,000.00 | $ | 36,050.00 | $ | 36,771.00 | $ | 37,874.13 |
| Medical Ins Administration | $ 1,097.00 | $ | 1,000.00 | $ | 1,030.00 | $ | 1,050.60 | $ | 1,082.12 |
| Advertising and promotion | $ 3,820.72 | $ | - | $ | - | $ | - | $ | - |
| Auto and Truck Expences | $ 101,935.39 | $ | 15,000.00 | $ | 15,450.00 | $ | 15,759.00 | $ | 16,231.77 |
| Bank Service charges | $ 2,897.06 | $ | 500.00 | $ | 515.00 | $ | 525.30 | $ | 541.06 |
| Credit card Charges | $ 12,382.48 | $ | 1,000.00 | $ | 1,030.00 | $ | 1,050.60 | $ | 1,082.12 |
| Business Licenses and permits | $ 45,304.08 | $ | 30,000.00 | $ | 30,900.00 | $ | 31,518.00 | $ | 32,463.54 |
| Charitable Contribuitions | $ 416.56 | $ | - | $ | - | $ | - | $ | - |
| Business Entertaining | $ 1,854.69 | $ | 1,000.00 | $ | 1,030.00 | $ | 1,050.60 | $ | 1,082.12 |
| Computer and internet Expences | $ 35,149.84 | $ | 10,000.00 | $ | 10,300.00 | $ | 10,506.00 | $ | 10,821.18 |
| Depriciation Expences | $ 1,072.80 | $ | - | $ | - | $ | - | $ | - |
| Dues and Subscriptions | $ 125.00 | $ | - | $ | - | $ | - | $ | - |

| | | | | | |
|---|---|---|---|---|---|
| Insurance expences | $ 674,578.73 | $ 30,000.00 | $ 30,900.00 | $ 31,518.00 | $ 32,463.54 |
| Intrest expences | $ 43,882.66 | $ - | $ - | $ - | $ - |
| Meals and Entertaiment | $ 4,590.69 | $ 1,000.00 | $ 1,030.00 | $ 1,050.60 | $ 1,082.12 |
| Meals - fully deductable | $ 2,803.76 | $ - | $ - | $ - | $ - |
| Office supplies | $ 12,691.91 | $ 8,000.00 | $ 8,240.00 | $ 8,404.80 | $ 8,656.94 |
| Office equipment | $ 6,875.25 | $ 3,000.00 | $ 3,090.00 | $ 3,151.80 | $ 3,246.35 |
| Office expences | $ 6,300.85 | $ 3,000.00 | $ 3,090.00 | $ 3,151.80 | $ 3,246.35 |
| Payroll Expences | $ 3,545,423.94 | $ 850,000.00 | $ 875,500.00 | $ 893,010.00 | $ 919,800.30 |
| Payroll Taxes | $ 307,640.14 | $ 68,000.00 | $ 70,040.00 | $ 71,440.80 | $ 73,584.02 |
| Proffesional Fees | $ 191,396.93 | $ 40,000.00 | $ 41,200.00 | $ 42,024.00 | $ 43,284.72 |
| Rent Expense | $ 213,011.55 | $ 120,000.00 | $ 123,600.00 | $ 126,072.00 | $ 129,854.16 |
| Telephone Expense | $ 25,171.10 | $ 5,000.00 | $ 5,150.00 | $ 5,253.00 | $ 5,410.59 |
| Travel Expense | $ 47,599.34 | $ 10,000.00 | $ 10,300.00 | $ 10,506.00 | $ 10,821.18 |
| Violation | $ 37,629.66 | $ 20,000.00 | $ 20,600.00 | $ 21,012.00 | $ 21,642.36 |
| Tax Penalties | $ 3,109.02 | $ - | $ - | $ - | $ - |
| **Total Expences** | **$ 16,337,631.44** | **$ 9,911,000.00** | **$ 10,208,330.00** | **$ 10,412,496.60** | **$ 10,724,871.50** |
| Net Income before reorganisation | $ 223,368.57 | $ 389,000.00 | $ 400,670.00 | $ 408,683.40 | $ 420,943.90 |
| class 1 | | $ 54,000.00 | $ 54,000.00 | $ 20,559.75 | |
| class 2 | | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 |
| class 3 | | $ 106,250.00 | $ 106,250.00 | $ 106,250.00 | $ 106,250.00 |
| class 4 | | $ 87,500.00 | $ 87,500.00 | $ 87,500.00 | $ 87,500.00 |
| Professional Fee's | | $ 100,000.00 | | | |
| Total reorganisation cost | | $ 372,750.00 | $ 272,750.00 | $ 239,309.75 | $ 218,750.00 |
| Net profit | | $ 16,250.00 | $ 127,920.00 | $ 169,373.65 | $ 202,193.90 |

**Year 5**

$ 11,480,189.86

**$ 11,480,189.86**

$ 1,671.87
$ 3,678,119.08
$ 39,010.35
$ 22,291.63
$ 5,907,282.16
$ 3,343.74
$ -
$ 39,010.35
$ 1,114.58
$ -
$ 16,718.72
$ 557.29
$ 1,114.58
$ 33,437.45
$ -
$ 1,114.58
$ 11,145.82
$ -
$ -

| |
|---|
| $ 33,437.45 |
| $ - |
| $ 1,114.58 |
| $ - |
| $ 8,916.65 |
| $ 3,343.74 |
| $ 3,343.74 |
| $ 947,394.31 |
| $ 75,791.54 |
| $ 44,583.26 |
| $ 133,749.78 |
| $ 5,572.91 |
| $ 11,145.82 |
| $ 22,291.63 |
| $ - |
| **$ 11,046,617.64** |
| $ 433,572.22 |
| $ 433,572.22 |

*EXHIBIT B*

**ABR Builders LLC**
**Balance Sheet Upon Confirmation**

**Assets**

| | | | |
|---|---|---|---:|
| **Current Assets** | | | |
| Cash | | $ | 45,000.00 |
| Total | | $ | 45,000.00 |
| | | | |
| **Fixed Assets** | | | |
| Depreciable Assets | | $ | 187,600.00 |

**Total Assets**　　　　　　　　　　　　$　232,600.00

**Liabilities**

| | | | |
|---|---|---|---:|
| **Post Petition Liabilities** | | | |
| Payroll liabilities | | $ | 25,800.00 |
| Loan Payable | | $ | 21,400.00 |
| Total Post Petition Liabilities | | $ | 47,200.00 |
| | | | |
| **Pre-Petition Liabilities** | | | |
| Unsecured Debt | | $ | 350,000.00 |
| Priority Debt | | | |
| Taxes | | $ | 425,000.00 |
| Wages | | $ | 100,000.00 |
| Other | | $ | 128,559.75 |
| Total Pre- Petition Liabilities | | $ | 653,559.75 |

**Total Liabilities**　　　　　　　　　　$ 1,050,759.75

**Total Liabilities and Equity**　　　　　$　(818,159.75)

*EXHIBIT C*

## LIQUIDATION ANALYSIS

### ASSETS

### Real Property

| | |
|---|---|
| Accounts Receivable | $350,000 |
| Cash | $45,000 |
| TOTAL | **$395,000** |

### LIABILITIES

### Distribution

| | | |
|---|---|---|
| Secured | | $128,000 |
| Chapter 7 Administration | Approx. | $50,000 |
| Chapter 11 Administration | Approx. | $65,000 |
| Priority Prepetition Payroll | Approx. | $100,000 |
| Priority Taxes | Approx. Claim $425,000 | $52,000 |
| General Unsecured Creditors | | $0 |

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

IN RE:                                                                   Chapter 11

ABR BUILDERS LLC,                                        Case No. 19-11041 (SHL)

                                        Debtor.
-------------------------------------------------------------X

## BALLOT FOR ACCEPTING OR REJECTING
## PLAN OF REORGANIZATION

The above Debtor filed a Plan of Reorganization (the "Plan") attached to the approved

Disclosure Statement (the "Disclosure Statement").    The Disclosure Statement provides

information to assist you in deciding how to vote your ballot.  If you do not have a Disclosure

Statement, you may obtain a copy from Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York,

NY 10017, Telephone No. (212) 867-9595, Facsimile No. (212) 949-1857 or by e-mail to

leo@leofoxlaw.com.  Court approval of the Disclosure Statement does not indicate approval of

the Plan by the Court.

You should review the Disclosure Statement and the Plan before you vote.  You may wish

to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your

claim has been placed in Class __ under the Plan.  If you hold claims in more than one class, you

will receive a ballot for each class in which you are entitled to vote.

If your ballot is not received by Leo Fox, Esq., 630 Third Avenue, 18th Floor, New York,

NY on or before _____, 2019 and such deadline is not extended, your vote will not count as

1

either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

### ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, the holder of a Class __ claim against the Debtor in the unpaid amount of ($_____) Dollars.

(Check one box only)

[ ] ACCEPTS THE PLAN                    [ ] REJECTS THE PLAN

Dated: _____

Print or type name:_____

Signature:_____

Title (if corporation or partnership)_____

Address:        _____

                _____

### RETURN THIS BALLOT TO:

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, NY 10017

2

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

IN RE:                                                        Chapter 11

ABR BUILDERS LLC,                                             Case No. 19-11041 (SHL)

                                        Debtor.
-------------------------------------------------------------X

### DEBTOR'S PLAN OF REORGANIZATION DATED OCTOBER 2, 2019

The above Debtor proposes the following Plan of Reorganization pursuant to § 1121 of

the Bankruptcy Code.    The Plan contemplates the payment of the secured claim, Administration

claims, priority taxes, priority wage claims and unsecured claims over four (4) years from the

Debtor paying $380,000 in cash and, over time, the Debtor's principals paying at least $200,000

and from the net proceeds of litigation with 1143 Fifth, LLC.

### ARTICLE I

### DEFINITIONS

1.    For purposes of this Plan, the following terms shall have the respective meanings

as hereinafter set forth (such meanings to be equally applicable to the singular and plural forms

of the terms defined, unless the context otherwise requires).    A term used in the Plan that is not

defined in the Plan but is used in the Bankruptcy Code shall have the meaning assigned to it in

the Bankruptcy Code.    Capitalized terms used in this Plan shall at all times refer to the terms as

defined in this *Article I*.

| | |
|---|---|
| "Administrative Claim" | An Allowed Claim or requests for payment under § 503(b) entitled to priority under § 507(a)(2) of the Bankruptcy Code, administrative expenses approved by the Court pursuant to Bankruptcy Code § 503(b), and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment). |
| "Allowed" | Means: (a) with respect to an Administrative Claim of the kind described in § 503(b), (2), (3), (4) or (5) of the Bankruptcy Code, an Administrative Claim that has been Allowed, in whole or in part, by a Final Order; (b) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in § 503(b), an Administrative Claim as to which no objection has been filed; (c) with respect to any Claim that is not an Administrative Claim, a Claim that is either (i) listed on the Schedules as not disputed, contingent, or unliquidated, or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (d) with respect to any Equity Security Interest, an Equity Security Interest that is not Disputed. |
| "Bankruptcy Code" | Title 11 of the United States Code, § 101, et seq. or as amended thereafter in effect as of the Petition Date. |
| "Bankruptcy Rules" | The Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code. |
| "Business Day" | Any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006. |
| "Chapter 11" | Chapter 11 of the Bankruptcy Code. |

2

"Claim"

A Claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor including, without limitation, claims allowable under § 502 of the Bankruptcy Code or requests for payment of administrative expenses allowed under § 503 of the Bankruptcy Code.

"Claimant" or "Creditor"

The holder of a Claim, including the holder of a claim for damages resulting from the rejection of an unexpired executory contract or lease.

"Confirmation Date"

The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed.

"Confirmation Order"

An Order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

"Court"

The United States Bankruptcy Court for the Southern District of New York, or such other court as may from time to time have original jurisdiction over this Chapter 11 proceeding.

"Debtor"

ABR Builders LLC

"Deficiency"

Shall be the amount of the insufficiency required to be paid to any Class under the Plan.

"Disallowed Claim"

Any Claim or portion thereof that is determined in a Final Order of the Court not to be allowed pursuant to § 502 and 503 of the Bankruptcy Code.

"Disclosure Statement"

Any disclosure statement required by § 1125 of the Bankruptcy Code and approved by the Court with respect to this Plan.

"Disputed"

Means, (1) with respect to any Claim other than an Administrative Claim, a Claim (i) that would be deemed filed pursuant to § 1111(a) of the Bankruptcy Code but as to which (A) a proof of claim has been timely

3

filed that is inconsistent in any way with the description or treatment of such Claim in the Schedules, or (B) as to which an objection has been filed, or (ii) that would not be deemed filed pursuant to § 111(a) of the Bankruptcy Code, whether by reason of its exclusion from the Schedules or its description therein as disputed, contingent or unliquidated, but as to which a proof of claim has been filed; or (2) with respect to an Administrative Claim, an Administrative Claim as to which an objection has been filed.

"Distribution"    A distribution of cash or cash equivalents to the holders of Allowed Claims under the Plan.

"Effective Date"    Shall be 30 days after the Confirmation Date.

"Estate"    The estate created in this case pursuant to § 541 of the Bankruptcy Code.

"Final Distribution"    The date on which all Distributions provided for under this Plan have been made.

"Final Order"    An Order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed, (b) the time for appeal has expired and (i) no timely Notice of Appeal has been filed and (ii) no Order of any Court having the affect of tolling or otherwise extending the effect of the Order or the appeal period of such Order.

"Net Income"    All income and receipts of the Debtor less all actual cash expenses, general overhead and disbursements and any income taxes (other than non-cash items such as depreciation and amortization). Payments to creditors under this Plan are considered expenses that reduce the Debtor's Net Income. This definition applies solely for purposes of determining payments made to creditors under the Plan and is independent of any definitions under the Internal Revenue Code

4

| | |
|---|---|
| "Petition Date" | April 4, 2019 |
| "Plan" | Debtor's Plan of Reorganization or as modified in accordance with the Bankruptcy Code. |
| "Principals" | Owners of the Debtor entity Boleslav Ryzinski and Lukas Macniak |
| "Secured Claim" | Any Claim that is secured by a Lien against Debtor's property which under non-bankruptcy law was perfected as of the Petition Date and is not otherwise avoidable, but only to the extent that such Claim is not greater than the value of the assets of the Debtor securing such debt. |
| "Secured Creditor" | A Creditor holding a Secured Claim. |
| "Unsecured Claim" | Any claim other than a secured claim, an administrative claim, a priority claim, a priority tax claim or stockholder interest claim. |

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

2.1    All claims and interests shall be divided into the following classes.

2.2    *Class 1* consists of the Allowed claim of JP Morgan Chase N.A. which such creditor alleges is an Allowed secured claim in the amount of $128,559.75.

2.3    *Class 2* consists of the Allowed priority wage claims asserted by employee-creditors to hold priority wage status under § 507(A)(4) of the Bankruptcy Code.

2.4    *Class 3* consists of the Allowed priority governmental claims asserted by governmental units to hold priority status pursuant to § 507(A)(8) of the Bankruptcy Code in the aggregate amount of approximately $425,000.

2.5    *Class 4* consists of the Allowed claims of the general unsecured creditors including, but not limited to, all unsecured claims, deficiency claims, unsecured governmental claims and unsecured wage claims in the estimated approximate amount of $3,800,000 - $4,000,000.

2.6    *Class 5* consists of the equity interests held by the Principals in the Debtor each in the amount of 50%.

2.2    The Debtor reserves the right to object to the validity, amount and classification of any claim in this case.

**ANY HOLDER OF A CLAIM OR INTEREST IN ANY OF THE ABOVE CLASSES WHO FAILS TO OBJECT IN WRITING TO THE CLASSIFICATION PROVIDED IN THE PLAN AT LEAST TWENTY (20) DAYS PRIOR TO CONFIRMATION SHALL BE DEEMED TO HAVE ACCEPTED SUCH CLASSIFICATION AND TO BE BOUND THEREBY. ANY BALLOT WHICH IS EXECUTED BY A HOLDER OF AN ALLOWED CLAIM WHICH DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED AN ACCEPTANCE OF THE PLAN.**

### ARTICLE III

### TREATMENT OF CLASSES THAT ARE NOT IMPAIRED

4.1    *Class 3* (Allowed governmental priority claims).   Pursuant to § 1129(a)(C) of the Bankruptcy Code and in full satisfaction of such claims, holders of the Allowed pre-petition priority tax claims of *Class 4* shall be paid by the Debtor from the "Pot" annual cash payments each in the amount of 25% of the aggregate of    allowed claims of such Class commencing upon the first year after the Effective Date and continuing on an Annual Basis up until April 4, 2024 (the last payment year date may be a shortened year commencing with the third year after the Effective Date and continuing up until April 4, 2024, which payments shall have a value as of the Effective Date of the Plan equal to the allowed amount of such claim.   All payments shall be applied in the following priority; tax debts which are responsible person and officer taxes that constitute personal

obligations of officers under the Internal Revenue Tax Code and thereafter to all other taxes   The payment period may not be extended.

4.2    *Class 5* Ownership interests shall retain their equity interest in the Debtor and, in addition, shall receive a discharge of all claims asserted against the ownership interest arising from or related to, or the guaranty of, the claims against the Debtor pursuant to ¶ 18.5 of the Plan in consideration for the payment to the Debtor by such ownership interest of a total of $200,000 payable   in four annual payments of $50,000 each commencing 15 days before the First Anniversary of the Effective Date (each payment made 15 days before the Anniversary of the Effective Date)   for a period of four (4) years up through the fourth year after the Effective Date ("Principal Contribution").   The ownership interest (the Principals) shall be entitled to the releases provided for in ¶ 18.5 of the Plan if the ownership makes all the required payments and such payments are distributed to creditors whether or not the Plan is finally consummated.

## ARTICLE V

## TREATMENT OF CLASSES THAT ARE IMPAIRED

5.1    *Class 1*   In full satisfaction of the claims of JP Morgan Chase N.A. (the "Bank"). Such creditor filed a Proof of Claim (Claim No. 35) asserting a claim in the amount of $128,559.75 secured by inventory, accounts, chattel paper, equipment, general intangibles and proceeds.   Such creditor shall be paid its Allowed secured claim by the Debtor through the making of monthly payments each in the amount of $4,500 per month commencing on the Effective Date against the principal amount of the Allowed secured claim plus interest at the prevailing pre-petition interest rate until the Allowed claim is paid in full.   The time period for payment of *Class 1* shall not be extended as is the case for other Classes as provided in "Implementation of Plan".

5.2    Such class shall retain its pre-petition liens to the extent that such liens were valid

and perfected as of the Chapter 11 filing date.   Upon the full payment of the claims of the Bank, the Bank shall deliver written releases of, or assign at the direction of the Debtor, its security interests on the Debtor's property.

5.3    *Class 2* Pursuant to § 1129(a)(9)(B)(i) of the Bankruptcy Code holders of the Allowed pre-petition priority wage claims shall be paid deferred monthly cash payments each in the amount of 25% of such allowed claim, upon the first year after the Effective Date  and continuing annually up through four (4) years after the Effective Date,  which payments shall have a value as of the Effective Date of the Plan equal to the allowed amount of such claim.   The four (4) year period may be extended as provided in "Implementation of Plan".

5.4    *Class 4*   The holders of Allowed general unsecured claims shall be paid their pro rata share of the balance of a "Pot" described below (see Implementation of Plan) in annual installments commencing the first year after the Effective Date and continuing annually for four (4) years after the Effective Date in full satisfaction of such claims.   Initially, payments shall be made on a worst-case basis (1.5% of the Principal Balance of an Allowed Class 4 claim as identified in the Disclosure Statement) and shall be adjusted as pending matters such as objections and determination of claims are determined and   the assets deposited into the Pot are quantified.

5.5    In the event that there is an insufficient amount to make a payment due to any Class (other than *Classes 1 and 3*) from Net Income, the Deficiency shall accrue and be paid in the following year, in addition to the Debtor's obligation to make the payment from Net Income in such year.   The four (4) year period shall be extended for another two (2) years in the event the Debtor has failed to make the full annual installment payment from Net Income in any year during the four (4) year payment period and shall be extended by four (4) years in the event the

8

Debtor fails to make the full annual installment payment from Net Income in any two (2) years during the four (4) year payment period.

5.6    In the event that   Classes 2 and 4 do not receive the entire installment balance due in any year as a result of   the Debtor's obligation to make an installment payment from Net Income, the Debtor shall deliver to each creditor in such Class Annual Statements of its operations in such year along with any distribution payment made to the creditor in such Class, reflecting the reason for the failure to pay the entire installment balance due in such year (see definition Net Income).   For the first year, the Annual Statement shall reflect operations which commence from the Confirmation Date up until 11 months after the Confirmation Date (the "First Annual Last Day").   Thereafter, during the second year, the Annual Statement shall reflect operations from the First Annual Last Day for a period of 12 months and so on until the termination of the payment period under the Plan.

5.7    The Debtor has agreed to escrow with its insolvency attorney the proceeds of the settlement with DMC totaling $80,000 payable over an installment payment schedule payable over 90 days after entry of a Bankruptcy Court Order approving the Stipulation which was entered on September 10, 2019.   This payment shall constitute an escrow payment on account of the obligations due under the Plan.

## ARTICLE VI

### 1143 FIFTH, LLC LITIGATION

6.1    On December 6, 2016 the Debtor and 1143 Fifth, LLC, the owner of certain real property located at 1143 Fifth Avenue, New York, New York (the "Real Property") entered into a contract   providing for the Debtor render contracting services consisting of   demolition, excavation, scaffolding, shoring, rendering certain concrete, masonry and other construction work

required to be performed with respect to the Real Property. The contract had a total price of $4,991,707.90. During the course of the contract, and as the contract was close to being completed, the Debtor alleged that the owner failed to comply with the responsibilities under the contract. The Debtor put the owner on notice that it would terminate the contract unless the owner cured the defaults alleged by the Debtor. A day before the Effective Default Date, the owner issued a notice purporting to terminate the contract. The owner has refused to pay the Debtor any sums which the Debtor claims is owed under the contract. The Debtor filed a Mechanic's Lien in the amount of $576,698.62 representing its valid claims for damages arising from the owner's breach of the contract and for work undisputedly performed by the Debtor which remains unpaid.

6.2    The owner filed a claim in the amount of $829,804 purporting to constitute the costs of completing the contract and assessing the Debtor damages as a consequence. The Debtor believes the claim of this creditor to be not meritorious and that it has a legitimate counterclaim which may be greater than the amount set forth on its Mechanic's Lien and will prevail in any litigation in this matter.

6.3    The Debtor intends to proceed with this litigation seeking to recover the amounts the Debtor believes are due and owing in the Bankruptcy Court. Any amounts recovered whether by litigation, collection or settlement shall be deposited into the "Pot" for distribution under the Plan, net after payment of the cost of litigation, attorney's fees and disbursements, and any other charges with respect to the litigation. The Debtor shall use its best efforts to pursue this litigation in an economical and expeditious fashion.

## ARTICLE VII

## IMPLEMENTATION OF PLAN

7.1    All creditors with Allowed claims, shall be paid their claims from the "Pot"
described below in waterfall fashion.  *Class 4* creditors shall share, on a *pro rata* basis, in the
"Pot" balance remaining after the non-Class 4 creditors are paid ("Class 4 Distribution).  All
distributions may be pre-paid without penalty.

7.2    The "Pot" shall be funded through a combination of (a) principals payment of
$200,000 over 4 years, each installment being $50,000 each, commencing 15 days before the first
anniversary of the Effective Date up through 4 years after the Effective Date (the "Principal
Contribution"), (b) an installment payment by the Debtor of $450,000 to be paid from Net Income
of the Debtor's operations payable over four (4) annual installments of $112,500, each year,
commencing 15 days before one (1) year after the Effective Date and continuing until 15 days
before  (4) years after the  Effective Date, and (c) the net proceeds whether by collection,
recovery or settlement, (after payment of all fees, expenses and costs of such litigation) of the
litigation with 1143 Fifth, LLC. (see litigation with 1143 Fifth, LLC) under this Plan.

7.3    The "Pot" is estimated to total over $1,000,000.  *Class 4* creditors shall share in the
"Pot", remaining after the non-Class 4 creditors are paid.  The Debtor shall make determinations
at the time of each annual distribution of the amounts necessary to pay the non-Class 4 creditors in
order of the priority of such creditors before determining the amount payable to the *Class 4*
creditors.  However, the Debtor shall make payments to *Class 4* under the assumption that "Pot"
sources shall make their required payments.

7.4    The "Pot" shall be distributed in the following priority; (a) the Debtor's legal and
an accounting costs in effecting the distribution and (b) the distribution described in the Plan.

7.5    In the event that there is an insufficient amount to make a Plan payment due to *Classes 2 and 4* (the "Deficiency"), the Deficiency shall accrue and be paid in the following year, in addition to the Debtor's obligation to make the distribution in such following year.    The four (4) year period shall be extended in the case of failure to pay *Classes 2 and 4* for another two (2) years in the event   there is a Deficiency in any year during the four (4) year payment period and shall be extended by four (4) years in the event there is a Deficiency in any two (2) years during the four (4) year payment period.

7.6    In the event that there is a Deficiency as a result of the Debtor's failure to make an installment payment to *Classes 2 and 4* from its Net Income, the Debtor shall deliver to each creditor in such Class Annual Statements of its operations in such year along with any distribution payment made to the creditor in such Class, reflecting the reason for the failure to pay the entire installment balance due in such year (see definition Net Income).   For the first year, the Annual Statement shall reflect operations which commence from the Confirmation Date up until 11 months after the Confirmation Date (the "First Annual Last Day").   Thereafter, during the second year, the Annual Statement shall reflect operations from the First Annual Last Day for a period of 12 months and so on until the termination of the payment period under the Plan.

7.7    The failure to make Plan payments to the creditors of by the time periods set forth in the Plan shall constitute a default under the Plan.

7.8    The Debtor has agreed to escrow with its insolvency attorney the proceeds of the settlement with DMC totaling $80,000 payable over an installment payment schedule payable over 90 days after entry of a Bankruptcy Court Order approving the Stipulation which was entered on September 10, 2019.   This payment shall constitute an escrow payment on account

of the obligations due under the Plan.

## ARTICLE VIII

## ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

8.1      Chapter 11 administration creditors, including the professionals for the Debtor who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code, and the fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, are not classified.   All fees of professionals retained by the Debtor shall be approved by the Bankruptcy Court and paid by the Debtor.

8.2      All post-confirmation quarterly reports and quarterly fees required by the United States Trustee under 28 U.S.C. § 1930 shall be filed and paid on a quarterly basis until entry of a final decree, dismissal of the case or conversion to Chapter 7.

## ARTICLE IX

## EXECUTORY CONTRACTS

9.1      The following pre-petition constructions contracts will be assumed under the Plan, 402 East 118th Street and 336 East 112th Street.   The Debtor will assume its Lease at its premises located at 39 West 38th Street, Suite 1100W, New York, New York 10018, the Lease on its storage facility located at Greenbrook in Stamford, Connecticut and equipment lease with TCF Capital Solutions providing for payment of $1,770 per month for an additional 14 payments and for ownership of the equipment.   The Debtor believes that there will not be any required expenditure of funds in order to cure these contracts.   The Debtor is prepared to demonstrate its ability to continue and complete the above referred construction contracts.

9.2      The Debtor will reject any other executory contracts on the Effective Date. Persons holding claims as a result of the rejection of any executory agreement identified in the Plan may file a claim with the Bankruptcy Court within 30 days of the Order approving the Plan.

## ARTICLE X

## DISTRIBUTIONS

10.1    *Distribution Agent*.    Payments due under the Plan after Confirmation and Consummation shall be made by the Debtor.

10.2    *Manner of Payments Under the Plan*.    Payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.    Payments made to Class 4 unsecured creditors shall be accompanied by a copy of the Debtor's Annual Statement reflecting the Debtor's calculation of the amounts due to Class 4 unsecured creditors in the event that Class 4 unsecured creditors do not receive the full annual installment amount due under the Plan.

10.3    *Fractional Cents*.    Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

10.4    *Unclaimed Cash*.    Except as otherwise provided herein, in the event any Entity fails to claim any cash within six (6) months from the date such cash is distributed, or such Entity fails to cash a check received as a distribution within six (6) months from the date of the distribution, such Entity shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such distribution was made shall be treated as a Disallowed Claim.    In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a Claimant.

14

10.5    *Disputed Payments or Distributions*.    In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such Entity, make it instead or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

### ARTICLE XI

### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.1    *Time Limit for Objections to Claims*. Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Effective Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the later of thirty (30) days following the Effective Date or within thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtor as provided for in the Plan.

11.2    *Resolution of Disputed Claims*.    Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days' notice, to the United States Trustee.

11.3    *Payments*.    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the

Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter. Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimants.

### ARTICLE XII

### EVENT OF DEFAULT

12.1    The occurrence of any one of the following shall constitute a default by the Debtor under the Plan:

a.    the Debtor defaults in making payments due under the Plan (and the grace period provided for herein shall have passed), and unless such default (hereinafter referred to as an "Event of Default") has been waived in accordance with the terms herein;

b.    the Debtor breaches any of the covenants contained herein prior to payment of payments due under the Plan;

c.    the Debtor seeks relief under any Federal or State statute (other than the Debtor's present Chapter 11 case); or

d.    a receiver, liquidator, custodian, or trustee is appointed for substantially all of the property of the Debtor prior to completion of the payment of payments due.

12.2    Upon the occurrence of an Event of Default, any Creditors shall notify the Debtor therefor, and the Debtor shall have ten (10) business days from the date of the sending of such notice to cure such breach, or request that the creditors extend the time for performance by the

Debtor for a period not exceeding 60 days.    Extension of such breach may be granted provided that creditors holding more than 2/3 an amount of the claims responding to the Debtor's request for an extension grant the Debtor an extension not exceed 60 days.    In the event the Debtor fails to cure such breach within the prescribed period, or the Debtor fails to cure the breach, or the time which it has been extended under this Plan, the Debtor shall be deemed to have defaulted on the terms of the Plan, and the Creditors shall have all rights available to them under state law or the Bankruptcy Code and the Bankruptcy Rules, or under this Plan, including conversion to a Chapter 7 case.

## ARTICLE XIII

## THE REORGANIZED DEBTOR

13.1    Upon the Effective Date, the Debtor will become the "Reorganized Debtor" and shall have achieved a reorganization involving the various claims of all the creditors under the Plan.    The Reorganized Debtor shall change its core business from General Contractor to a Construction Manager which will eliminate the funding of payroll and substantial subcontractor expense and increase the Net Income.    The Reorganized Debtor shall continue its corporate identity and shall continue to function as a corporation with all the authority granted by its certificate of incorporation, the bylaws and appropriate law.    The principals shall continue to own the shares of stock of the Reorganized Debtor in the same percentages that such principals owned the share of stock of the Debtor.    The Principals shall continue to act as Officers. All the present provisions in the certificate of incorporation and the by-laws, shareholders' meetings, election of directors and other corporate matters shall govern the Reorganized Debtor.    The provisions of New York Corporation Law shall govern the election and selection of any officer and director of the Debtor, and any successor thereof.

13.2    Upon Confirmation, the Reorganized Debtor shall be vested with all property of the Debtor free and clear of claims and interests, except as set forth in the Plan, and after Confirmation the Reorganized Debtor shall continue its business and manage its affairs without further supervision of the Court subject to the retention of jurisdiction provisions set forth herein.

## ARTICLE XIV

## MODIFICATION OF PLAN

14.1    The Debtor may amend or modify this Plan at any time prior to Confirmation without approval of the Court; after Confirmation, the Debtor may modify the Plan before substantial consummation with approval of the Court.    The Debtor may make immaterial modifications to the Plan at any time upon notice of presentment of such modifications to all Creditors.

## ARTICLE XV

## PROVISIONS FOR CLASSES WHICH ARE
## IMPAIRED AND DO NOT ACCEPT THE PLAN

15.1    In the event that any impaired class of Claims or interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if all other requirements under 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each impaired class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly and is "fair and equitable".    Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires that at least one impaired class of claims accept the Plan.    The Debtor believes that the Plan is "fair and equitable" and that the Plan does not "discriminate unfairly".

15.2    _Secured Claims_. A plan will be deemed fair and equitable with respect to a non-accepting class of secured claims if (a) the holder of each claim in such class will retain its lien or liens and receive deferred cash payments totaling the allowed secured claim, of a value, as of the Consummation Date, equal to the value of such holder's interest in the collateral (b) the holder of each claim in such class will receive the proceeds from any sale of such collateral, or (c) the holder of each claim in such class will realize the indubitable equivalent of its allowed secured claim.

15.3    _Unsecured Claims_.    A plan will be deemed fair and equitable with respect to a non-accepting class of unsecured creditors' claims if (a) the holder of each claim in such class will receive or retain under the plan property of a value, as of the Consummation Date, equal to the allowed amount of its claim, or (b) holders of claims or interests that are junior to the claims of such creditors will not receive or retain any property under the plan on account of such junior claim or interest.

15.4    _Interests_.    A plan will be deemed fair and equitable with respect to a non-accepting class of interests if the plan provides that (a) each member of such class receives or retains on account of its interest property value, as of the Consummation Date equal to the greatest amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) holders of interests that are junior to the interests of such class will not receive or retain any property under the plan on account of such junior interests.

## ARTICLE XVI

## GENERAL PROVISIONS

16.1    *Notices*. All notices, requests, elections or demands in connection with the Plan, including any change of address of any Claimant or holder of a Stock Interest for the purposes of receiving distributions under the Plan and forfeiting same pursuant to this Plan hereof, shall be in writing and shall be deemed to have been given when received or, if mailed, five days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor, addressed to:

Leo Fox, Esq.
630 Third Avenue - 18th Floor
New York, New York 10017

All notices and requests to Claimants and Stock Interest Holders of any Class shall be sent to them at their last known address.    The Debtor, and any Claimant or Stock Interest Holder of any Class, may designate in writing any other address for purposes of this § which designation shall be effective upon receipt.

16.2    *Headings*. The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

16.3    *Severability*.    Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

16.4    *Governing Law*.    Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

## ARTICLE XVII

## UNITED STATES TRUSTEE FEES

17.1    All unpaid fees to the United States Trustee under 28 U.S.C. § 1930 through the
Effective Date shall be paid on or before the Effective Date from funds in the Distribution
Account.    Any unpaid fees due to the United States Trustee after the Effective Date shall be
paid from the operating funds of the Debtor when such fees are due and payable.

## ARTICLE XVIII

## DISCHARGE OF CLAIMS AND INTERESTS DISCHARGE

18.1    Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall
discharge all claims against the Debtor.    Except as expressly provided herein, the rights
afforded in the Plan and the treatment of all Creditors and Holders of Stock Interest provided
herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims
as of the Effective Date, of any nature whatsoever, whether known or unknown, contingent or
liquidated including any interest accrued or expenses incurred thereon from and after the
Debtor's Petition Date, against the Debtor, the Debtor-in-Possession or the reorganized Debtor
(or any of their properties or interest in properties), Except as otherwise provided in the Plan,
upon the Consummation Date, all Claims against the Debtor and will be satisfied, discharged and
released in full exchange for the consideration provided for hereunder.    All persons and entities
shall be precluded from asserting against the Debtor, the reorganized Debtor, its successors, or
its respective assets or properties, any other Claims based upon any act or omission, transaction
or other activity of any kind or nature that occurred prior to the Confirmation Date.

### 18.2    *Injunction*

Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, claim, other liability or interest against the Debtor that would be discharged upon Confirmation of this Plan, pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this section are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching collecting or recovering in any manner or judgment, award, decree, order other than as permitted under Sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

### 18.3    *Exculpation*

To the extent permitted by applicable law, if the respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors, and agents of the Debtor and their professionals act in good faith, they shall not be liable to any holder of a Claim, or any party with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with (a) the operation of the Debtor; (b) the proposal or implementation of any of the transactions provided for or contemplated under this Plan; or (c) the administration of this Plan or the distribution to be made pursuant to this Plan, other than for willful misconduct or gross negligence.   The Debtor and its respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors and agents, may rely on the opinions of counsel, certified public accountants,

and other experts or professionals employed by the Debtor, and such reliance shall conclusively establish good faith.

### 18.4    *Releases by the Debtor*

On the Effective Date, to the fullest extent permissible under applicable law, the Debtor and Debtor-in-Possession shall be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the documents delivered in connection therewith) against the principals, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, that relate in any way to the Debtor or Debtor-in-Possession, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or other capacity.   Nothing in this § shall be construed as a release of any fraud, gross negligence, or willful misconduct.

### 18.5    *Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, and in consideration for the payments being made by the Principals with respect to the Plan, each holder of a claim receiving distribution under the Plan (the "Releasing Party") is deemed to have released the Debtor and the principals from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct or guarantee claims held by any of the Releasing Parties against the Debtor and its principals or derivative claims asserted on behalf of the Debtor[s], whether known or unknown, foreseen or unforeseen, existing or hereinafter

arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any events, acts, omissions, or the transactions giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, or its principals, taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

## ARTICLE XIX

### RETENTION OF JURISDICTION

19.1    Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    Determination of the allowability of claims upon objection to such Claims.

(b)    Determination of request for payment of Claims and fees entitled to priority under § 507(a)(1), or of post-petition fee disputes.

(c)    Resolution of any dispute concerning interpretation of the Plan.

(d)    Implementation of the provisions of the Plan.

(e)    Entry of Orders in aid of consummation of the Plan including Orders to protect the revested and Reorganized Debtor from creditor action.

(f)    Modification of the Plan pursuant to § 1127 of the Bankruptcy Code.

(g)    Adjudication of any causes of action including voiding powers action commenced by the Debtor, including the commencement and prosecution of 1143 Fifth, LLC litigation.

(h)    Entry of a final order of Confirmation closing the case.

Dated: New York, New York
        October 2, 2019

**ABR BUILDERS LLC**

By: _____
    Boleslav Ryzinski
    President

                        10/2/19

/s/ Leo Fox
Leo Fox, Esq.
Attorney for Debtor
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com