Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE:                                          Chapter 11

ABR BUILDERS LLC,                               Case No. 19-11041 (SHL)

                            Debtor.
-----------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION
## DATED OCTOBER 2, 2019 (CORRECTED OCTOBER 8, 2019)

The above Debtor proposes the following Plan of Reorganization pursuant to § 1121 of the Bankruptcy Code.   The Plan contemplates the payment of the secured claim, Administration claims, priority taxes, priority wage claims and unsecured claims over four (4) years from the Debtor paying $380,000 in cash and, over time, the Debtor's principals paying at least $200,000 and from the net proceeds of litigation with 1143 Fifth, LLC.

## ARTICLE I

## DEFINITIONS

1.      For purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires).   A term used in the Plan that is not defined in the Plan but is used in the Bankruptcy Code shall have the meaning assigned to it in the Bankruptcy Code.   Capitalized terms used in this Plan shall at all times refer to the terms as defined in this *Article I*.

"Administrative Claim"

An Allowed Claim or requests for payment under § 503(b) entitled to priority under § 507(a)(2) of the Bankruptcy Code, administrative expenses approved by the Court pursuant to Bankruptcy Code § 503(b), and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment).

"Allowed"

Means: (a) with respect to an Administrative Claim of the kind described in § 503(b), (2), (3), (4) or (5) of the Bankruptcy Code, an Administrative Claim that has been Allowed, in whole or in part, by a Final Order; (b) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in § 503(b), an Administrative Claim as to which no objection has been filed; (c) with respect to any Claim that is not an Administrative Claim, a Claim that is either (i) listed on the Schedules as not disputed, contingent, or unliquidated, or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (d) with respect to any Equity Security Interest, an Equity Security Interest that is not Disputed.

"Bankruptcy Code"

Title 11 of the United States Code, § 101, et seq. or as amended thereafter in effect as of the Petition Date.

"Bankruptcy Rules"

The Rules of Bankruptcy Procedure as applicable to cases under Title 11 of the United States Code.

"Business Day"

Any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

"Chapter 11"

Chapter 11 of the Bankruptcy Code.

"Claim"                          A Claim, as defined in § 101(5) of the
                                 Bankruptcy Code, against the Debtor
                                 including, without limitation, claims
                                 allowable under § 502 of the Bankruptcy
                                 Code or requests for payment of
                                 administrative expenses allowed under § 503
                                 of the Bankruptcy Code.

"Claimant" or "Creditor"         The holder of a Claim, including the holder
                                 of a claim for damages resulting from the
                                 rejection of an unexpired executory contract
                                 or lease.

"Confirmation Date"              The date on which an Order confirming this
                                 Plan is entered by the Court, provided that
                                 such Order has not been stayed.

"Confirmation Order"             An Order of the Bankruptcy Court
                                 confirming the Plan in accordance with the
                                 Bankruptcy Code.

"Court"                          The United States Bankruptcy Court for the
                                 Southern District of New York, or such other
                                 court as may from time to time have original
                                 jurisdiction over this Chapter 11 proceeding.

"Debtor"                         ABR Builders LLC

"Deficiency"                     Shall be the amount of the insufficiency
                                 required to be paid to any Class under the
                                 Plan.

"Disallowed Claim"               Any Claim or portion thereof that is
                                 determined in a Final Order of the Court not
                                 to be allowed pursuant to § 502 and 503 of
                                 the Bankruptcy Code.

"Disclosure Statement"           Any disclosure statement required by § 1125
                                 of the Bankruptcy Code and approved by the
                                 Court with respect to this Plan.

"Disputed"                       Means, (1) with respect to any Claim other
                                 than an Administrative Claim, a Claim (i)
                                 that would be deemed filed pursuant to §
                                 1111(a) of the Bankruptcy Code but as to

3

which (A) a proof of claim has been timely filed that is inconsistent in any way with the description or treatment of such Claim in the Schedules, or (B) as to which an objection has been filed, or (ii) that would not be deemed filed pursuant to § 111(a) of the Bankruptcy Code, whether by reason of its exclusion from the Schedules or its description therein as disputed, contingent or unliquidated, but as to which a proof of claim has been filed; or (2) with respect to an Administrative Claim, an Administrative Claim as to which an objection has been filed.

"Distribution"                          A distribution of cash or cash equivalents to the holders of Allowed Claims under the Plan.

"Effective Date"                        Shall be 30 days after the Confirmation Date.

"Estate"                                The estate created in this case pursuant to § 541 of the Bankruptcy Code.

"Final Distribution"                    The date on which all Distributions provided for under this Plan have been made.

"Final Order"                           An Order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed, (b) the time for appeal has expired and (i) no timely Notice of Appeal has been filed and (ii) no Order of any Court having the affect of tolling or otherwise extending the effect of the Order or the appeal period of such Order.

"Net Income"                            All income and receipts of the Debtor less all actual cash expenses, general overhead and disbursements and any income taxes (other than non-cash items such as depreciation and amortization). Payments to creditors under this Plan are considered expenses that reduce the Debtor's Net Income. This definition applies solely for purposes of determining payments made to creditors under the Plan and is independent of any definitions under the Internal Revenue Code

4

| | |
|---|---|
| "Petition Date" | April 4, 2019 |
| "Plan" | Debtor's Plan of Reorganization or as modified in accordance with the Bankruptcy Code. |
| "Pot" | Shall mean the fund of (a) principals payment of $200,000 over four (4) years, each installment being $50,000 each, commencing 15 days before the first anniversary of the Effective Date up through four (4) years after the Effective Date (the "Principal Contribution"), (b) an installment payment by the Debtor of $450,000 to be paid from Net Income of the Debtor's operations payable over four (4) annual installments of $112,500, each year, commencing 15 days before one (1) year after the Effective Date and continuing until 15 days before four (4) years after the Effective Date and (c) the net proceeds whether by collection, recovery or settlement (after payment of all fees, expenses and costs of such litigation) of the litigation with 1143 Fifth, LLC (see litigation with 1143 Fifth, LLC) under this Plan |
| "Principals" | Owners of the Debtor entity<br>Boleslav Ryzinski and Lukas Macniak |
| "Secured Claim" | Any Claim that is secured by a Lien against Debtor's property which under non-bankruptcy law was perfected as of the Petition Date and is not otherwise avoidable, but only to the extent that such Claim is not greater than the value of the assets of the Debtor securing such debt. |
| "Secured Creditor" | A Creditor holding a Secured Claim. |
| "Unsecured Claim" | Any claim other than a secured claim, an administrative claim, a priority claim, a priority tax claim or stockholder interest claim. |

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

2.1     All claims and interests shall be divided into the following classes.

2.2     *__Class 1__* consists of the Allowed claim of JP Morgan Chase N.A. which such creditor alleges is an Allowed secured claim in the amount of $128,559.75.

2.3     *__Class 2__* consists of the Allowed priority wage claims asserted by employee-creditors to hold priority wage status under § 507(A)(4) of the Bankruptcy Code.

2.4     *__Class 3__* consists of the Allowed priority governmental claims asserted by governmental units to hold priority status pursuant to § 507(A)(8) of the Bankruptcy Code in the aggregate amount of approximately $425,000.

2.5     *__Class 4__* consists of the Allowed claims of the general unsecured creditors including, but not limited to, all unsecured claims, deficiency claims, unsecured governmental claims and unsecured wage claims in the estimated approximate amount of $3,800,000 - $4,000,000.

2.6     *__Class 5__* consists of the equity interests held by the Principals in the Debtor each in the amount of 50%.

2.2     The Debtor reserves the right to object to the validity, amount and classification of any claim in this case.

**ANY HOLDER OF A CLAIM OR INTEREST IN ANY OF THE ABOVE CLASSES WHO FAILS TO OBJECT IN WRITING TO THE CLASSIFICATION PROVIDED IN THE PLAN AT LEAST TWENTY (20) DAYS PRIOR TO CONFIRMATION SHALL BE DEEMED TO HAVE ACCEPTED SUCH CLASSIFICATION AND TO BE BOUND THEREBY. ANY BALLOT WHICH IS EXECUTED BY A HOLDER OF AN ALLOWED CLAIM WHICH DOES NOT INDICATE ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED AN ACCEPTANCE OF THE PLAN.**

## ARTICLE III

## <u>TREATMENT OF CLASSES THAT ARE NOT IMPAIRED</u>

4.1    <u>*Class 3*</u> (Allowed governmental priority claims).    Pursuant to § 1129(a)(C) of the Bankruptcy Code and in full satisfaction of such claims, holders of the Allowed pre-petition priority tax claims of <u>*Class 3*</u> shall be paid by the Debtor from the "Pot" annual cash payments each in the amount of 25% of the aggregate of     allowed claims of such Class commencing upon the first year after the Effective Date and continuing on an Annual Basis up until April 4, 2024 (the last payment year date may be a shortened year commencing with the third year after the Effective Date and continuing up until April 4, 2024, which payments shall have a value as of the Effective Date of the Plan equal to the allowed amount of such claim.    All payments shall be applied in the following priority; tax debts which are responsible person and officer taxes that constitute personal obligations of officers under the Internal Revenue Tax Code and thereafter to all other taxes.    The payment period may not be extended.

4.2    <u>*Class 5*</u> Ownership interests shall retain their equity interest in the Debtor and, in addition, shall receive a discharge of all claims asserted against the ownership interest arising from or related to, or the guaranty of, the claims against the Debtor pursuant to ¶ 18.5 of the Plan in consideration for the payment to the Debtor by such ownership interest of a total of $200,000 payable  in four annual payments of $50,000 each commencing 15 days before the First Anniversary of the Effective Date (each payment made 15 days before the Anniversary of the Effective Date)   for a period of four (4) years up through the fourth year after the Effective Date ("Principal Contribution").    The ownership interest (the Principals) shall be entitled to the releases provided for in ¶ 18.5 of the Plan if the ownership makes all the required payments and such payments are distributed to creditors whether or not the Plan is finally consummated.

# ARTICLE V

## TREATMENT OF CLASSES THAT ARE IMPAIRED

5.1     *Class 1*     In full satisfaction of the claims of JP Morgan Chase N.A. (the "Bank").

Such creditor filed a Proof of Claim (Claim No. 35) asserting a claim in the amount of $128,559.75

secured by inventory, accounts, chattel paper, equipment, general intangibles and proceeds.   Such

creditor shall be paid its Allowed secured claim by the Debtor through the making of monthly

payments each in the amount of $4,500 per month commencing on the Effective Date against the

principal amount of the Allowed secured claim plus interest at the prevailing pre-petition interest

rate until the Allowed claim is paid in full.   The time period for payment of *Class 1* shall not be

extended as is the case for other Classes as provided in "Implementation of Plan".

5.2     Such class shall retain its pre-petition liens to the extent that such liens were valid

and perfected as of the Chapter 11 filing date.   Upon the full payment of the claims of the Bank,

the Bank shall deliver written releases of, or assign at the direction of the Debtor, its security

interests on the Debtor's property.

5.3     *Class 2* Pursuant to § 1129(a)(9)(B)(i) of the Bankruptcy Code holders of the

Allowed pre-petition priority wage claims shall be paid deferred annual cash payments each in the

amount of 25% of such allowed claim, upon the first year after the Effective Date   and continuing

annually up through four (4) years after the Effective Date,   which payments shall have a value as

of the Effective Date of the Plan equal to the allowed amount of such claim.   The four (4) year

period may be extended as provided in "Implementation of Plan".

5.4     *Class 4*     The holders of Allowed general unsecured claims shall be paid their pro

rata share of the balance of a "Pot" described below (see Implementation of Plan) in annual

installments commencing the first year after the Effective Date and continuing annually for four

(4) years after the Effective Date in full satisfaction of such claims.   Initially, payments shall be made on a worst-case basis (1.5% of the Principal Balance of an Allowed *Class 4* claim as identified in the Disclosure Statement) and shall be adjusted as pending matters such as objections and determination of claims are determined and   the assets deposited into the Pot are quantified.

5.5     In the event that there is an insufficient amount to make a payment due to any Class (other than *Classes 1 and 3*) from Net Income (the "Deficiency"), the Deficiency shall accrue and be paid in the following year, in addition to the Debtor's obligation to make the payment from Net Income in such year.   The four (4) year period shall be extended for another two (2) years in the event the Debtor has failed to make the full annual installment payment from Net Income in any year during the four (4) year payment period and shall be extended by four (4) years in the event the Debtor fails to make the full annual installment payment from Net Income in any two (2) years during the four (4) year payment period.

5.6     In the event that *Classes 2 and 4* do not receive the entire installment balance due in any year as a result of the failure of the Debtor's obligation to make an installment payment from Net Income, the Debtor shall deliver to each creditor in such Class Annual Statements of its operations in such year along with any distribution payment made to the creditor in such Class, reflecting the reason for the failure to pay the entire installment balance due in such year (see definition Net Income).   For the first year, the Annual Statement shall reflect operations which commence from the Confirmation Date up until 11 months after the Confirmation Date (the "First Annual Last Day").   Thereafter, during the second year, the Annual Statement shall reflect operations from the First Annual Last Day for a period of 12 months and so on until the termination of the payment period under the Plan.

5.7     The Debtor has agreed to escrow with its insolvency attorney the proceeds of the settlement with DMC totaling $80,000 payable over an installment payment schedule payable over 90 days after entry of a Bankruptcy Court Order approving the Stipulation which was entered on September 10, 2019.   This payment shall constitute an escrow payment on account of the obligations due under the Plan.

**ARTICLE VI**

**<u>1143 FIFTH, LLC LITIGATION</u>**

6.1     On December 6, 2016 the Debtor and 1143 Fifth, LLC, the owner of certain real property located at 1143 Fifth Avenue, New York, New York (the "Real Property") entered into a contract   providing for the Debtor render contracting services consisting of   demolition, excavation, scaffolding, shoring, rendering certain concrete, masonry and other construction work required to be performed with respect to the Real Property.   The contract had a total price of $4,991,707.90.   During the course of the contract, and as the contract was close to being completed, the Debtor alleged that the owner failed to comply with the responsibilities under the contract.   The Debtor put the owner on notice that it would terminate the contract unless the owner cured the defaults alleged by the Debtor.   A day before the Effective Default Date, the owner issued a notice purporting to terminate the contract.   The owner has refused to pay the Debtor any sums which the Debtor claims is owed under the contract.   The Debtor filed a Mechanic's Lien in the amount of $576,698.62 representing its valid claims for damages arising from the owner's breach of the contract and for work undisputedly performed by the Debtor which remains unpaid.

6.2     The owner filed a claim in the amount of $829,804 purporting to constitute the costs of completing the contract and assessing the Debtor damages as a consequence.   The Debtor

believes the claim of this creditor to be not meritorious and that it has a legitimate counterclaim which may be greater than the amount set forth on its Mechanic's Lien and will prevail in any litigation in this matter.

6.3    The Debtor intends to proceed with this litigation seeking to recover the amounts the Debtor believes are due and owing in the Bankruptcy Court.   Any amounts recovered whether by litigation, collection or settlement shall be deposited into the "Pot" for distribution under the Plan, net after payment of the cost of litigation, attorney's fees and disbursements, and any other charges with respect to the litigation.   The Debtor shall use its best efforts to pursue this litigation in an economical and expeditious fashion.

## ARTICLE VII

## IMPLEMENTATION OF PLAN

7.1    All creditors with Allowed claims, shall be paid their claims from the "Pot" described below in waterfall fashion.   _Class 4_ creditors shall share, on a _pro rata_ basis, in the "Pot" balance remaining after the non-Class 4 creditors are paid ("Class 4 Distribution).   All distributions may be pre-paid without penalty.

7.2    The "Pot" shall be funded through a combination of (a) principals payment of $200,000 over four (4) years, each installment being $50,000 each, commencing 15 days before the first anniversary of the Effective Date up through four (4) years after the Effective Date (the "Principal Contribution"), (b) an installment payment by the Debtor of $450,000 to be paid from Net Income  of the Debtor's operations payable over four (4) annual installments of $112,500, each year, commencing 15 days before one (1) year after the Effective Date and continuing until 15 days before four (4) years after the Effective Date, and (c) the net proceeds whether by collection, recovery or settlement, (after payment of all fees, expenses and costs of such litigation)

of the litigation with 1143 Fifth, LLC (see litigation with 1143 Fifth, LLC) under this Plan.

7.3     The "Pot" is estimated to total over $1,000,000.   *Class 4* creditors shall share in the "Pot", remaining after the non-Class 4 creditors are paid.   The Debtor shall make determinations at the time of each annual distribution of the amounts necessary to pay the non-Class 4 creditors in order of the priority of such creditors before determining the amount payable to the *Class 4* creditors.   However, the Debtor shall make payments to *Class 4* under the assumption that "Pot" sources shall make their required payments.

7.4     The "Pot" shall be distributed in the following priority; (a) the Debtor's legal and an accounting costs in effecting the distribution and (b) the distribution described in the Plan.

7.5     In the event that there is an insufficient amount to make a Plan payment due to *Classes 2 and 4*, the Deficiency shall accrue and be paid in the following year, in addition to the Debtor's obligation to make the distribution in such following year.   The four (4) year period shall be extended in the case of failure to pay *Classes 2 and 4* for another two (2) years in the event   there is a Deficiency in any year during the four (4) year payment period and shall be extended by four (4) years in the event there is a Deficiency in any two (2) years during the four (4) year payment period.

7.6     In the event that there is a Deficiency as a result of the Debtor's failure to make an installment payment to *Classes 2 and 4* from its Net Income, the Debtor shall deliver to each creditor in such Class Annual Statements of its operations in such year along with any distribution payment made to the creditor in such Class, reflecting the reason for the failure to pay the entire installment balance due in such year (see definition Net Income).   For the first year, the Annual Statement shall reflect operations which commence from the Confirmation Date up until 11 months after the Confirmation Date (the "First Annual Last Day").   Thereafter,

during the second year, the Annual Statement shall reflect operations from the First Annual Last Day for a period of 12 months and so on until the termination of the payment period under the Plan.

7.7    The failure to make Plan payments to the creditors of by the time periods set forth in the Plan shall constitute a default under the Plan.

7.8    The Debtor has agreed to escrow with its insolvency attorney the proceeds of the settlement with DMC totaling $80,000 payable over an installment payment schedule payable over 90 days after entry of a Bankruptcy Court Order approving the Stipulation which was entered on September 10, 2019.   This payment shall constitute an escrow payment on account of the obligations due under the Plan.

## ARTICLE VIII

## ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS

8.1    Chapter 11 administration creditors, including the professionals for the Debtor who have rendered services and who are entitled to compensation under §§ 327 and 503(b) of the Bankruptcy Code, and the fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, are not classified.   All fees of professionals retained by the Debtor shall be approved by the Bankruptcy Court and paid by the Debtor.

8.2    All post-confirmation quarterly reports and quarterly fees required by the United States Trustee under 28 U.S.C. § 1930 shall be filed and paid on a quarterly basis until entry of a final decree, dismissal of the case or conversion to Chapter 7.

## ARTICLE IX

## EXECUTORY CONTRACTS

9.1    The following pre-petition constructions contracts will be assumed under the Plan, 402 East 118th Street and 336 East 112th Street.   The Debtor will assume its Lease at its premises

13

located at 39 West 38th Street, Suite 1100W, New York, New York 10018, the Lease on its storage facility located at Greenbrook in Stamford, Connecticut and equipment lease with TCF Capital Solutions providing for payment of $1,770 per month for an additional 14 payments and for ownership of the equipment.   The Debtor believes that there will not be any required expenditure of funds in order to cure these contracts.   The Debtor is prepared to demonstrate its ability to continue and complete the above referred construction contracts.

9.2    The Debtor will reject any other executory contracts on the Effective Date. Persons holding claims as a result of the rejection of any executory agreement identified in the Plan may file a claim with the Bankruptcy Court within 30 days of the Order approving the Plan.

## ARTICLE X

## DISTRIBUTIONS

10.1    ***Distribution Agent***.    Payments due under the Plan after Confirmation and Consummation shall be made by the Debtor.

10.2    ***Manner of Payments Under the Plan***.    Payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.   Payments made to *Class 4* unsecured creditors shall be accompanied by a copy of the Debtor's Annual Statement reflecting the Debtor's calculation of the amounts due to Class 4 unsecured creditors in the event that *Class 4* unsecured creditors do not receive the full annual installment amount due under the Plan.

10.3    ***Fractional Cents***.    Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.   Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (up or down).

10.4    ***Unclaimed Cash***.    Except as otherwise provided herein, in the event any Entity fails to claim any cash within six (6) months from the date such cash is distributed, or such Entity fails to cash a check received as a distribution within six (6) months from the date of the distribution, such Entity shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such distribution was made shall be treated as a Disallowed Claim.    In this regard, distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a Claimant.

10.5    ***Disputed Payments or Distributions***.    In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Debtor may, in lieu of making such payment or distribution to such Entity, make it instead or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

## ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.1    ***Time Limit for Objections to Claims***. Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than sixty (60) days subsequent to the Effective Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of

an executory contract on the later of thirty (30) days following the Effective Date or within thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtor as provided for in the Plan.

11.2    ***Resolution of Disputed Claims***.    Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days' notice, to the United States Trustee.

11.3    ***Payments***.    Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim belongs.    Such payments and distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, but not later than thirty (30) days thereafter.    Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimants.

## ARTICLE XII

## EVENT OF DEFAULT

12.1    The occurrence of any one of the following shall constitute a default by the Debtor under the Plan:

a.    the Debtor defaults in making payments due under the Plan (and the grace period provided for herein shall have passed), and unless such default (hereinafter referred to as an "Event of Default") has been waived in accordance with the terms herein;

b.      the Debtor breaches any of the covenants contained herein prior to payment of payments due under the Plan;

c.      the Debtor seeks relief under any Federal or State statute (other than the Debtor's present Chapter 11 case); or

d.      a receiver, liquidator, custodian, or trustee is appointed for substantially all of the property of the Debtor prior to completion of the payment of payments due.

12.2    Upon the occurrence of an Event of Default, any Creditors shall notify the Debtor therefor, and the Debtor shall have ten (10) business days from the date of the sending of such notice to cure such breach, or request that the creditors extend the time for performance by the Debtor for a period not exceeding 60 days.   Extension of such breach may be granted provided that creditors holding more than 2/3 an amount of the claims responding to the Debtor's request for an extension grant the Debtor an extension not exceed 60 days.   In the event the Debtor fails to cure such breach within the prescribed period, or the Debtor fails to cure the breach, or the time which it has been extended under this Plan, the Debtor shall be deemed to have defaulted on the terms of the Plan, and the Creditors shall have all rights available to them under state law or the Bankruptcy Code and the Bankruptcy Rules, or under this Plan, including conversion to a Chapter 7 case.

## ARTICLE XIII

## THE REORGANIZED DEBTOR

13.1    Upon the Effective Date, the Debtor will become the "Reorganized Debtor" and shall have achieved a reorganization involving the various claims of all the creditors under the Plan.   The Reorganized Debtor shall change its core business from General Contractor to a Construction Manager which will eliminate the funding of payroll and substantial subcontractor

17

expense and increase the Net Income.   The Reorganized Debtor shall continue its corporate identity and shall continue to function as a corporation with all the authority granted by its certificate of incorporation, the bylaws and appropriate law.   The principals shall continue to own the shares of stock of the Reorganized Debtor in the same percentages that such principals owned the share of stock of the Debtor.    The Principals shall continue to act as Officers. All the present provisions in the certificate of incorporation and the by-laws, shareholders' meetings, election of directors and other corporate matters shall govern the Reorganized Debtor.   The provisions of New York Corporation Law shall govern the election and selection of any officer and director of the Debtor, and any successor thereof.

13.2    Upon Confirmation, the Reorganized Debtor shall be vested with all property of the Debtor free and clear of claims and interests, except as set forth in the Plan, and after Confirmation the Reorganized Debtor shall continue its business and manage its affairs without further supervision of the Court subject to the retention of jurisdiction provisions set forth herein.

## ARTICLE XIV

## <u>MODIFICATION OF PLAN</u>

14.1    The Debtor may amend or modify this Plan at any time prior to Confirmation without approval of the Court; after Confirmation, the Debtor may modify the Plan before substantial consummation with approval of the Court.   The Debtor may make immaterial modifications to the Plan at any time upon notice of presentment of such modifications to all Creditors.

**ARTICLE XV**

**PROVISIONS FOR CLASSES WHICH ARE
IMPAIRED AND DO NOT ACCEPT THE PLAN**

15.1    In the event that any impaired class of Claims or interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if all other requirements under 1129(a) of the Bankruptcy Code are satisfied, and if, with respect to each impaired class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly and is "fair and equitable".    Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires that at least one impaired class of claims accept the Plan.    The Debtor believes that the Plan is "fair and equitable" and that the Plan does not "discriminate unfairly".

15.2    ***Secured Claims***. A plan will be deemed fair and equitable with respect to a non-accepting class of secured claims if (a) the holder of each claim in such class will retain its lien or liens and receive deferred cash payments totaling the allowed secured claim, of a value, as of the Consummation Date, equal to the value of such holder's interest in the collateral (b) the holder of each claim in such class will receive the proceeds from any sale of such collateral, or (c) the holder of each claim in such class will realize the indubitable equivalent of its allowed secured claim.

15.3    ***Unsecured Claims***.    A plan will be deemed fair and equitable with respect to a non-accepting class of unsecured creditors' claims if (a) the holder of each claim in such class will receive or retain under the plan property of a value, as of the Consummation Date, equal to the allowed amount of its claim, or (b) holders of claims or interests that are junior to the claims

of such creditors will not receive or retain any property under the plan on account of such junior claim or interest.

15.4    **_Interests_**.    A plan will be deemed fair and equitable with respect to a non-accepting class of interests if the plan provides that (a) each member of such class receives or retains on account of its interest property value, as of the Consummation Date equal to the greatest amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) holders of interests that are junior to the interests of such class will not receive or retain any property under the plan on account of such junior interests.

## ARTICLE XVI

## GENERAL PROVISIONS

16.1    **_Notices_**. All notices, requests, elections or demands in connection with the Plan, including any change of address of any Claimant or holder of a Stock Interest for the purposes of receiving distributions under the Plan and forfeiting same pursuant to this Plan hereof, shall be in writing and shall be deemed to have been given when received or, if mailed, five days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor, addressed to:

Leo Fox, Esq.
630 Third Avenue - 18th Floor
New York, New York 10017

All notices and requests to Claimants and Stock Interest Holders of any Class shall be sent to them at their last known address.   The Debtor, and any Claimant or Stock Interest Holder of any Class, may designate in writing any other address for purposes of this § which designation shall be effective upon receipt.

16.2    _**Headings**_. The headings used in the Plan are inserted for convenience only and neither constitutes a portion of the Plan nor in any manner affect the provisions of the Plan.

16.3    _**Severability**_.    Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

16.4    _**Governing Law**_.    Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

## ARTICLE XVII

## UNITED STATES TRUSTEE FEES

17.1    All unpaid fees to the United States Trustee under 28 U.S.C. § 1930 through the Effective Date shall be paid on or before the Effective Date from funds in the Distribution Account.    Any unpaid fees due to the United States Trustee after the Effective Date shall be paid from the operating funds of the Debtor when such fees are due and payable.

## ARTICLE XVIII

## DISCHARGE OF CLAIMS AND INTERESTS DISCHARGE

18.1    Pursuant to § 1141(d) of the Bankruptcy Code, the Confirmation Order shall discharge all claims against the Debtor.    Except as expressly provided herein, the rights afforded in the Plan and the treatment of all Creditors and Holders of Stock Interest provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims as of the Effective Date, of any nature whatsoever, whether known or unknown, contingent or liquidated including any interest accrued or expenses incurred thereon from and after the Debtor's Petition Date, against the Debtor, the Debtor-in-Possession or the reorganized Debtor

(or any of their properties or interest in properties), Except as otherwise provided in the Plan, upon the Consummation Date, all Claims against the Debtor and will be satisfied, discharged and released in full exchange for the consideration provided for hereunder.   All persons and entities shall be precluded from asserting against the Debtor, the reorganized Debtor, its successors, or its respective assets or properties, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

18.2   *__Injunction__*

Except as otherwise provided in the Plan or Confirmation Order on and after the Confirmation Date, all entities which have held, currently hold or may hold a debt, claim, other liability or interest against the Debtor that would be discharged upon Confirmation of this Plan, pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this section are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching collecting or recovering in any manner or judgment, award, decree, order other than as permitted under Sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

18.3   *__Exculpation__*

To the extent permitted by applicable law, if the respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors, and agents of the Debtor and their professionals act in good faith, they shall not be liable to any holder of a Claim, or any party with respect to any action, forbearance from action, decision, or exercise of discretion

taken during the period from the Petition Date to the Effective Date in connection with (a) the operation of the Debtor; (b) the proposal or implementation of any of the transactions provided for or contemplated under this Plan; or (c) the administration of this Plan or the distribution to be made pursuant to this Plan, other than for willful misconduct or gross negligence.   The Debtor and its respective affiliates, officers, directors, members, representatives, attorneys, accountants, financial advisors and agents, may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall conclusively establish good faith.

18.4    ***Releases by the Debtor***

On the Effective Date, to the fullest extent permissible under applicable law, the Debtor and Debtor-in-Possession shall be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under the Plan and the documents delivered in connection therewith) against the principals, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, that relate in any way to the Debtor or Debtor-in-Possession, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or other capacity.   Nothing in this § shall be construed as a release of any fraud, gross negligence, or willful misconduct.

18.5    ***Releases by Holders of Claims and Interests***

As of the Effective Date, except as otherwise provided in the Plan or arising from intentional fraud, gross negligence, or willful misconduct, and in consideration for the payments

being made by the Principals with respect to the Plan, each holder of a claim receiving distribution under the Plan (the "Releasing Party") is deemed to have released the Debtor and the principals from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct or guarantee claims held by any of the Releasing Parties against the Debtor and its principals or derivative claims asserted on behalf of the Debtor[s], whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any events, acts, omissions, or the transactions giving rise to, any claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, or its principals, taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

## ARTICLE XIX

## **RETENTION OF JURISDICTION**

19.1    Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    Determination of the allowability of claims upon objection to such Claims.

24

(b)     Determination of request for payment of Claims and fees entitled to priority under § 507(a)(1), or of post-petition fee disputes.

(c)     Resolution of any dispute concerning interpretation of the Plan.

(d)     Implementation of the provisions of the Plan.

(e)     Entry of Orders in aid of consummation of the Plan including Orders to protect the revested and Reorganized Debtor from creditor action.

(f)     Modification of the Plan pursuant to § 1127 of the Bankruptcy Code.

(g)     Adjudication of any causes of action including voiding powers action commenced by the Debtor, including the commencement and prosecution of 1143 Fifth, LLC litigation.

(h)     Entry of a final order of Confirmation closing the case.

Dated: New York, New York
        October 8, 2019

***ABR BUILDERS LLC***

By:     */s/ Boleslav Ryzinski*
        Boleslav Ryzinski
        President

*/s/ Leo Fox*
Leo Fox, Esq.
Attorney for Debtor
630 Third Avenue – 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com